IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ACCEPTANCE INDEMNITY<br>INSURANCE COMPANY,<br><br>    Applicant,<br><br>v.<br><br>FRANKFORD FARMS, LLC,<br><br>    Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. 5:23-MC-009-H-BQ |

## REPORT AND RECOMMENDATION

Now before the Court are Applicant Acceptance Indemnity Insurance Company's (Acceptance) Motion to Appoint an Umpire (ECF No. 1),[1] and Respondent Frankford Farms, LLC's (Frankford) Motion to Dismiss under Rules 12(b)(1) and (b)(6). ECF No. 5.[2] These motions arise from a dispute between an insurance carrier and its insured after the insured's properties were allegedly damaged in a June 23, 2023 storm. The parties conducted inspections and exchanged estimates, but after disagreeing about the amount of loss, Frankford invoked appraisal. During this process, Frankford emailed Judge Leslie Hatch in the 237th District Court for Lubbock County and requested that he appoint an umpire to determine the amount of loss, which he did. ECF No. 1, at 4. Believing Frankford's request to be improper under the insurance policy's terms, Acceptance initiated this case against Frankford by filing a motion asking this Court to replace Judge Hatch's appointed umpire with a new one. *Id.* Frankford moves to dismiss

---

[1] Federal Rule of Civil Procedure 3 requires that a civil action be "commenced by filing a complaint with the court." FED. R. CIV. P. 3. Acceptance instead filed the instant Motion to Appoint an Umpire to initiate this matter, causing it to be filed as a miscellaneous case by the Clerk of Court.

[2] The Honorable James Wesley Hendrix, United States District Judge, has referred both motions to the undersigned for report and recommendation under 28 U.S.C. § 636(b)(1)(A). ECF Nos. 2, 14.

the action, contending the Court lacks subject matter jurisdiction and that Acceptance has failed to state a claim. ECF Nos. 5, 6.

Because this case raises important issues to which judges within the Fifth Circuit disagree, including within the Northern District of Texas, and because it appears likely the Fifth Circuit will resolve or clarify these issues in the near future, the undersigned recommends that the district judge stay this case pending the Fifth Circuit's decision in *Sentry Insurance v. Morgan*, No. 3:22-CV-1185-X, 2023 WL 4711405 (N.D. Tex. July 21, 2023), *appeal docketed*, No. 23-10888 (5th Cir. Aug. 25, 2023).

## I. Background

To determine whether a stay is necessary, the undersigned only sets forth the facts and arguments raised herein that relate to the pertinent issue on appeal in *Sentry*—how do courts determine the amount in controversy for diversity jurisdiction where a plaintiff files a petition seeking appointment of an umpire under an insurance policy's appraisal clause?

### A. Procedural History and Background Facts

On June 23, 2023, multiple properties owned by Frankford in Lubbock, Texas, purportedly suffered substantial damage from a storm. Mot. to Appt. Umpire 4, ECF No. 1 [hereinafter Mot. Appt.]; Frankford's Br. 5, ECF No. 6. Acceptance insured these properties under a policy beginning on May 3, 2023, which in relevant part provides that:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss.

Mot. Appt. 3–4. Frankford filed a claim with Acceptance on July 11, 2023, concerning the alleged storm damage. *Id.* at 4. The properties were inspected throughout July and August 2023, and Acceptance estimated Frankford's damages to be valued at $2,586.21. Frankford's Br. 5. Frankford then submitted its public adjuster's estimate, which totaled $181,366.31. Mot. Appt. 2 (citing Frankford's adjuster's estimate, ECF No. 1-2, at 7). Disagreeing with Acceptance's valuation, Frankford invoked the policy appraisal process on September 15, 2023. *Id.* at 4; Frankford's Br. 5. Frankford appointed Ryan Davis as its appraiser and on October 2, 2023, Acceptance appointed Eddie Schleh. Frankford's Br. 5–6. On October 12, 2023, Schleh apparently sent Davis a list of proposed umpires, to which Davis never responded. Mot. Appt. 4–5.

On October 25, 2023, however, Frankford's counsel emailed Judge Hatch, representing that the appraisers failed to reach an agreement as to an umpire within fifteen days, as required by the policy, and requesting that he appoint an umpire. *Id.* at 4; Frankford's Br. 6; *see* ECF No. 1-6. Judge Hatch appointed an umpire the same day. Mot. Appt. 4; Frankford's Br. 6; *see* ECF No. 1-7 (attaching the response from Judge Hatch where he provided the appointed umpire's name and contact information).

Believing Frankford's request to be improper, Acceptance initiated this case against Frankford by filing the instant Motion to Appoint an Umpire on October 31, 2023. ECF No. 1. Frankford responded to the Motion to Appoint an Umpire by filing both a response to Acceptance's motion and a motion to dismiss, arguing in part that the Court lacks subject matter jurisdiction because the pleaded amount in controversy in this declaratory action cannot establish diversity jurisdiction.

### B. Parties' Positions on the Amount in Controversy

Acceptance contends in its Motion to Appoint an Umpire that this Court possesses diversity jurisdiction under 28 U.S.C. § 1332. Mot. Appt. 1. Acceptance posits that because this matter seeks declaratory relief by asking this Court to appoint an umpire, the alleged loss in the property damage claim that the umpire will be considering is the relevant number for establishing amount in controversy. *Id.* at 2. Thus, because Frankford claims that its loss is $181,366.31, the umpire will be considering more than $75,000 in damages, which it avers satisfies the jurisdictional amount. *Id.* (citing Frankford's adjuster's estimate, ECF No. 1-2, at 7). Acceptance acknowledges case law within this district holding that in a declaratory action requesting only appointment of an umpire, the amount in controversy cannot be based upon pre-appraisal estimates. *Id.* at 10 (citing *Sentry Ins.*, 2023 WL 4711405). Acceptance asks this Court to reject that holding and asserts that the amount may be based on pre-appraisal estimates because the role of an umpire is to "weigh and assess all damages alleged, not simply the two competing estimates from each party's appraisers." *Id.* Thus, because the amount could exceed $75,000 based on pre-appraisal estimates, and "it must be a legal certainty that the amount in controversy is less than the amount required," Acceptance maintains the disputed amount satisfies diversity jurisdiction requirements. *Id.*

In Frankford's Motion to Dismiss, it contends this Court lacks subject matter jurisdiction. Frankford's Br. 6–7. Frankford avers Acceptance fails to establish the requisite amount in controversy because Acceptance does not request damages and "only seeks the appointment of an umpire whose value does not exceed $75,000." *Id.* at 7–8. Rather, Acceptance relies on "one estimate delivered by Frankford Farms's public adjuster[,] who is not one of the parties' appointed appraisers," to establish the amount, while failing to "note its own estimate of . . . $2,586.21." *Id.* at 8. Frankford asserts Acceptance cannot rely on "possible future liability" to establish the amount

in controversy because an umpire is only responsible for determining the amount of loss, not liability. *Id.* at 9. Frankford also contends this view is in line with several other federal court decisions that have remanded cases for failure to meet the amount in controversy, where the only relief sought was appointment of an umpire. *Id.* at 10.

In Acceptance's Response to Frankford's Motion to Dismiss, it reiterates that diversity jurisdiction is established and that Frankford's public adjuster's estimate—$181,366.31—can be utilized to demonstrate that the amount in controversy is met because its "potential liability" exceeds $75,000. Acceptance's Resp. 2, ECF No. 13. In addition, Acceptance distinguishes Frankford's cited authority concerning how to calculate the amount in controversy, which differentiates between arbitration and appraisal for determining the amount in dispute in that an "arbitration ultimately decides liability for all potential legal damages whereas appraisal does not." *Id.* at 4. Acceptance contends that "this is a distinction without a difference" because this "declaratory judgment action at issue decides the umpire who will help issue the appraisal award," or Acceptance's potential liability. *Id.* Thus, Acceptance urges the Court to consider the varying estimates submitted for evaluating jurisdiction, otherwise, "a federal court could never appoint an umpire without a preexisting lawsuit." *Id.* Alternatively, Acceptance asks the Court to abate this action until the Fifth Circuit enters an opinion on the pending appeal in *Sentry Insurance v. Morgan* "if this Court considers the issue to be ambiguous." *Id.* at 6.

### C. Disagreement over the Value of the Right to be Protected

The parties correctly note that there is no consensus among courts within the Fifth Circuit—or in the Northern District of Texas, for that matter—as to how amount in controversy is determined in diversity cases seeking only an umpire appointment.

"The appointment of an umpire . . . is declaratory . . . in nature." *Mi Realty, LLC v. Atl. Cas. Ins. Co.*, No. 3:21-cv-00368-L, 2022 WL 705861, at *3 (N.D. Tex. Mar. 8, 2022) (Lindsay, J.). "In an action for declaratory relief, the amount in controversy is 'the value of the right to be protected or the extent of the injury to be prevented.'" *Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) (per curiam) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)).

This, however, is where agreement ends—is the right to be protected simply the right to have an umpire appointed or the amount of the potential award? Some courts hold that because an umpire merely determines the "amount of loss" rather than liability, which the insurer may still reject, cases involving only the appointment of an umpire cannot supply a sufficient amount in controversy. *See, e.g., Mi Realty, LLC*, 2022 WL 705861, at *3 (remanding case seeking only the appointment of an umpire, as "the umpire's anticipated valuation cannot be the measure of the amount in controversy because there is no present 'right to be protected' or 'injury to be prevented'" (citation omitted)); *Treasure Star Props. Fund, Inc. v. Admiral Ins. Co.*, No. 4:12-CV-462-Y, 2013 WL 12114861, at *1 (N.D. Tex. Apr. 1, 2013) (Means, J.) (recognizing that while "there may be a broader dispute between the parties that involves more than $75,000," that question is not germane to determining the amount in controversy in a declaratory action seeking *only* the appointment of a neutral umpire); *Franklin v. Allstate Ins. Co.*, No. 1:12-CV-016-C, ECF No. 10, at 2 (N.D. Tex. Mar. 12, 2012) (Cummings, J.) ("[T]he aim of a request for appointment of an umpire is merely to obtain a valuation, not to impose liability. . . . [T]herefore, the umpire's expected valuation cannot be the measure of the amount in controversy . . . .").

Others hold that because an umpire's decision is central to determining the amount of loss, it is essentially assessing the potential liability of the insurer, and thus, "the total amount claimed

to be due under the policy rather than just the cost of appointing an umpire" is the relevant value. *Liberty Mut. Grp. Inc. v. Mayes*, No. 5:20-CV-00967, 2020 WL 5881826, at *2 (W.D. La. Sept. 15, 2020), *R. & R. adopted by* 2020 WL 5880965 (W.D. La. Oct. 2, 2020); *see Indus. Packaging Corp. v. Union Ins. Co. of Providence*, No. 5:22-05972, 2023 WL 2925196, at *3 (W.D. La. Mar. 21, 2023), *R. & R. adopted by* 2023 WL 2920947 (W.D. La. Apr. 12, 2023); *Friedrichs v. Geovera Specialty Ins. Co.*, No. 7:12–CV–392, 2013 WL 674021, at *3 (S.D. Tex. Feb. 22, 2013) (considering "the [insured's] demand letter as the primary evidence of the amount in controversy" in an action requesting an umpire be appointed).

Several of the latter cases analogize a motion to appoint an umpire to the Fifth Circuit's holding in *Webb v. Investacorp, Incorporated* concerning a motion to compel arbitration—the value of the right to be protected is the amount of the *potential* award. 89 F.3d 252, 255–56 (5th Cir. 1996) (per curiam); *see Calvillo Funeral Home, Inc. v. Sentinel Ins. Co.*, No. 5:19-cv-00161-H, ECF No. 10, at 3–4 (N.D. Tex. Sept. 23, 2019) (Hendrix, J.) (comparing an umpire appointment action to other declaratory actions such as those to compel arbitration, where the right to be protected is the amount of the potential award); *see also Mayes*, 2020 WL 5881826, at *2 ("[T]he amount in controversy equals the amount at issue under the insurance polic[y]." (citation omitted)); *Church Mut. Ins. Co. v. New Home Full Gospel Ministries*, No. 06-5633, 2007 WL 9780601, at *2 (E.D. La. Apr. 5, 2007) (same); *Ear, Nose & Throat Consultants of N. Miss., PLLC v. State Auto Ins.*, No. 3:05CV18-B-B, 2006 WL 1071834, at *2 (N.D. Miss. Apr. 21, 2006) (considering the value of the underlying dispute just as the Fifth Circuit looked to the "possible award resulting from the desired arbitration" (citation omitted)).

The former cases often distinguish *Webb* on the basis that an arbitration results in a binding award and finding of liability, while an umpire merely determines the amount of loss, not liability.

*See Mi Realty, LLC*, 2022 WL 705861, at *3 ("[T]he appointment of an arbitrator . . . is distinct from the appointment of an umpire, who is tasked only with determining the amount of a loss, [to] which the parties still may legally object."); *Sentry Ins.*, 2023 WL 4711405, at *2 (noting that even though "insurance appraisals are generally distinguished from arbitrations, some courts . . . have decided that . . . the underlying dispute" governs the amount in controversy, despite an umpire only determining the amount of loss and not whether the insurer is liable (internal quotation marks, footnote, brackets, and citations omitted)); *Franklin*, No. 1:12-CV-016-C, ECF No. 10, at 1 ("[T]he aim of a request for the appointment of an umpire is merely to obtain a valuation, not impose liability . . . .").

### D. *Sentry Insurance v. Morgan*

The procedural posture and facts in *Sentry* closely track the instant case. Sentry Insurance filed its "complaint" requesting only umpire appointment, which is also the only relief Acceptance seeks. *See* No. 3:22-cv-01185-X, ECF No. 1 ("Petition for Appointment of Umpire"). Sentry Insurance included in its complaint the appraisal provision from the parties' insurance policy, which is identical to the one in Acceptance and Frankford's agreement. *Id.* at 2–3.

Northern District of Texas Judge Starr concluded that because Sentry Insurance only sought an umpire and based its amount in controversy on defendant's initial demand letter, "the eventual dispute [was] embryonic at best" and "[t]o develop the dispute, the appraisers must complete their initial estimates." 2023 WL 4711405, at *3. Because the contract required that the umpire assess the *appraisers'* estimates rather than the *parties'* estimates, Judge Starr explained that "it makes little sense to assess the amount in controversy in an umpire-appointment suit by using the parties' delta." *Id.* (emphasis omitted). In addition, as noted by Judge Starr and admitted by Acceptance in the instant case, it is unclear whether an umpire will be necessary where

the appraisers have yet to disagree as to an umpire or the amount of loss. *Id.*; Mot Appt. 5–6. "[M]any of those steps could derail the amount of the underlying dispute from the [loss amount] demanded." *Sentry Ins.*, 2023 WL 4711405, at *3. Judge Starr therefore found that "the value of the right to be protected is the difference between the appraisers' estimates." *Id.* at *2.[3]

Similar to *Sentry Insurance*, the parties here have either (1) not conducted appraisals or (2) failed to provide the numbers to the Court, thus preventing it from determining the disputed amount, assuming the Court followed *Sentry*'s rationale. Moreover, Acceptance has not established whether an umpire is limited to deciding between the two appraisals or free to award more, less, or nothing at all. Lastly, because even judges within the Northern District appear to be in different camps, it is still unclear whether a petition only seeking appointment of an umpire can satisfy the amount in controversy to establish diversity jurisdiction. *Compare Mi Realty, LLC*, 2022 WL 705861, at *3 ("[T]he umpire's anticipated valuation cannot be the measure of the amount in controversy . . . ."), *Franklin*, No. 1:12-CV-016-C, ECF No. 10, at 1 ("[A] petition for appointment of an umpire for the purpose of obtaining an insurance appraisal is, in and of itself, insufficient to satisfy the requisite amount in controversy . . . ."), *and Treasure Star Props. Fund, Inc.*, 2013 WL 12114861, at *1 ("[T]he . . . dispute, which seeks merely the appointment of an umpire, does not involve a sufficient amount in controversy . . . ."), *with Calvillo Funeral Home, Inc.*, No. 5:19-cv-00161-H, ECF No. 10, at 1, 6 ("[A]pplications for the appointment of an umpire here are aimed at resolving an insurance dispute, the value of which easily exceeds $75,000" based on the difference between the parties' estimates.), *and Sentry Ins.*, 2023 WL 4711405, at *2 ("[T]he value of the right to be protected is the difference between the appraisers' estimates."); *see also*

---

[3] *Sentry* also distinguished umpire cases relying on *Webb*, e.g., *Ear, Nose & Throat Consultants*, 2006 WL 1071834, noting that unlike in arbitration cases, an umpire's decision does not encompass "the entire controversy between the parties," thus resulting in the "eventual dispute" not forming "the basis of the action before the court." *Sentry Ins.*, 2023 WL 4711405, at *2–3.

9

*Display Concepts Party Rentals, Inc. v. Gen. Star Indem. Co.*, No. 2:22-CV-201-Z, 2022 WL 16752848, at *1 (N.D. Tex. Nov. 7, 2022) (Kacsmaryk, J.) (granting parties' Joint Notice of Stipulated Remand in action where the plaintiff sought "only . . . [the] 'appointment of an umpire,'" acknowledging that "[t]he Fifth Circuit has not addressed the determination of an amount in controversy in actions seeking the appointment of an umpire for appraisal," and the "courts in this circuit [are] split on the issue").

In addition, while many judges in the Northern District have held that the amount in controversy was not met based solely on umpire appointment, most other courts in the Fifth Circuit hold to the contrary. *See, e.g., Mayes*, 2020 WL 5881826, at *2; *New Home Full Gospel Ministries*, 2007 WL 9780601, at *2; *Ear, Nose & Throat Consultants*, 2006 WL 1071834, at *2; *Indus. Packaging Corp.*, 2023 WL 2925196, at *3; *Friedrichs*, 2013 WL 674021, at *3.

*Sentry Insurance v. Morgan* is currently pending on appeal and scheduled for oral argument on April 5, 2024. No. 23-10888, ECF No. 38 (5th Cir. Feb. 21, 2024) (calendaring case for oral argument). One of the issues on appeal is how "the amount in controversy for purposes of diversity jurisdiction [is] determined in a petition filed to appoint an umpire pursuant to an appraisal clause in an insurance policy." *Sentry Ins.*, No. 23-10888, ECF No. 16, at 15 (5th Cir. Oct. 29, 2023).

Because of the striking similarities between *Sentry Insurance* and the instant case, and the divergent holdings across different courts on this question, including the Northern District, the undersigned concludes that a stay in this case is appropriate, pending resolution of the appeal in *Sentry Insurance*. The undersigned reaches this conclusion for the reasons set forth below.

## II. Discussion

Acceptance asks the Court to, *inter alia*, abate this action until the Fifth Circuit enters an opinion regarding the pending appeal in *Sentry Insurance v. Morgan* "if this Court considers the

10

[amount in controversy] issue to be ambiguous." Acceptance's Resp. 6. Frankford has neither agreed to nor objected to a stay. *See* Frankford's Br. 5–19; Frankford's Resp. Br. 1–14, ECF No. 9.

"A district court has inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This includes "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. Although courts retain broad discretion to stay proceedings, they must avoid stays that "are 'immoderate or of an indefinite duration.'" *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) (citation omitted); *see Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 204 n.6 (5th Cir. 1985) (explaining that a court must "tailor" any stay to avoid unduly prejudicing other litigants (citation omitted)).

Here, because one of the issues on appeal involves how to measure the amount in controversy in petitions requesting umpire appointment—exactly what the Court is tasked with in this case—the Fifth Circuit will likely provide guidance, if not a definitive answer, to resolving that question. This weighs in favor of staying the action. *See In re Zimmer M/L Taper Hip Prosthesis*, MDL No. 2859, 2021 WL 5963392, at *4 (S.D.N.Y. Dec. 16, 2021) ("Courts regularly stay cases where an appeal in a related case will resolve (or at least greatly simplify) the issues in the stayed case."); *Greco v. Nat'l Football League*, 116 F. Supp. 3d 744, 761 (N.D. Tex. 2015) (holding that a stay was in "the interests of the parties, and appropriate conservation of judicial

11

resources," in part because the issues in the related case on appeal would "very likely bear on [the present] case" and "streamline issues").

In addition, because the Fifth Circuit is scheduled to hear argument in *Sentry Insurance* in less than a month, a stay pending appeal is not indefinite, nor will it be of an immoderate duration. *See Trinity Indus., Inc. v. 188 L.L.C.*, No. 3:02-CV-405-H, 2002 WL 1315743, at *3 (N.D. Tex. June 13, 2002) (staying case only until the appellate court renders a decision); *Second Amend. Found., Inc. v. Bureau of Alcohol, Firearms, & Explosives*, No. 3:21-CV-0116-B, 2023 WL 4497266, at *1 (N.D. Tex. July 10, 2023) (granting a brief stay because "resolution of [the related] appeal [would] almost certainly affect, if not control, the [c]ourt's decision," and any prejudice to the non-movant would be "minimal" given that "the stay [was] likely to be short").

Finally, because this matter is not before the Court based on Acceptance having removed the pending state case, the parties are free to seek relief in state court regarding Judge Hatch's umpire appointment, regardless of any stay issued herein. *See In re State Farm Lloyds*, No. 13-22-00545-CV, 2023 WL 2029148, at *7 (Tex. App.—Corpus Christi Feb. 15, 2023, no pet.) (mem. op.) (granting mandamus relief in the form of vacating the state court's order appointing an umpire and directing it to appoint a new one in part because the movant "lack[ed] a remedy by appeal because a request to appoint an umpire . . . is not . . . subject to appeal"); *Cantu v. S. Ins. Co.*, No. 03-14-00533-CV, 2015 WL 5096858, at *5 (Tex. App.—Austin Aug. 25, 2015, no pet.) (mem. op.) (suggesting party displeased with state court's umpire appointment could lodge objection with the court, seek reconsideration, or file petition for writ of mandamus). The pendency of this federal proceeding acts as no restraint on the parties' right to continue pursuing the extant state court action. *See Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) ("Early in the history of our country a general rule was established that state and federal courts would not interfere with or try

to restrain each other's proceedings."); *Aetna Cas. & Sur. Co. v. Brunken*, 373 S.W.2d 811, 813 (Tex. App.—Eastland 1963, writ ref'd n.r.e.) ("The general rule . . . in Texas[] is that pendency of a prior suit between the same parties over the same cause of action in a federal court is not ground for abatement of a subsequent suit in a court of the state in which the federal court sits."); *Mack v. Reserve Life Ins. Co.*, 217 S.W.2d 39, 40 (Tex. Civ. App.—San Antonio 1948, no writ) (recognizing that when the same suit is filed in federal and state courts, "regardless of which court first took jurisdiction of the case, neither should b[e] enjoined from proceeding with the trial"). Thus, staying the instant case should not prejudice the parties and may in fact encourage resolution of the issue in its original forum.

Because the Fifth Circuit's decision in the pending appeal in *Sentry Insurance* will impact the Court's adjudication on the preliminary issue in this case, it is in the best interest of the parties and the Court's resources to stay the present matter. The undersigned therefore recommends the district judge stay the present case until the Fifth Circuit enters an opinion in the *Sentry Insurance* appeal.

### III.  Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **STAY** the proceedings in this case until the appellate proceedings in *Sentry Insurance* are concluded. The undersigned further recommends that upon any such order adopting the present findings, the district judge **DIRECT** the Clerk of Court to close this case administratively for statistical purposes and reopen the case on request of a party after determining that a stay is no longer warranted.

## IV. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: March 12, 2024.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE